UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| THOMAS DE SHAZO and NATASHA RAY, in their individual capacities and as the de facto parents and next friend of minor children K.L. and K.D., | Case No. 1:21-cv-00427-BLW **MEMORANDUM DECISION AND ORDER** |
| Plaintiffs, | |
| v. | |
| JUDGE CHRISTOPHER M BIETER, JUDGE ANNIE MCDAVITT, JOHN DOES 1-20, and JANE DOES 1-20, | |
| Defendants. | |

**INTRODUCTION**

Plaintiffs initiated this action *pro se* with the filing of an Emergency Petition for Temporary Restraining Order and Preliminary Injunction (Dkt. 1), which Plaintiffs subsequently amended (Dkt. 3). Because a separate complaint has not been filed, the Court construes the Amended Emergency Petition for Temporary Restraining Order and Preliminary Injunction (Dkt. 3) as a first amended complaint ("FAC"). For the reasons discussed below, the Court dismisses the FAC without prejudice and grants Plaintiffs leave to amend. The Court also denies Plaintffs'

request for preliminary injunctive relief.

## BACKGROUND

This case involves guardianship and custody cases, and determinations made in those cases, regarding a six year old girl, Plaintiff K.L. According to the FAC, K.L. lived with Plaintiffs Natasha Ray, Thomas De Shazo, and K.D. for all but five months of K.L.'s life. Through the guardianship and custody cases, K.L. was ordered removed from the home of Plaintiffs and placed with K.L.'s biological parents, Anthony Lowman and Kayla Morgan Smart. Plaintiffs initiated this action shortly thereafter.

The FAC is brought under 42 U.S.C. § 1983 and names as defendants two of the state court judges involved in the guardianship and custody cases—Judge Christopher M. Bieter and Judge Annie McDevitt, both of whom are magistrate judges in the Fourth Judicial District Court for the State of Idaho. The FAC alleges that Defendants' guardianship and custody decisions are arbitrary and capricious and issued without jurisdiction and authority, and that Defendants violated Plaintiffs' constitutional rights. The FAC seeks to have this Court (1) overturn the state court custody determinations regarding K.L.; (2) "take control" of the custody matter from the state court; and (3) issue various orders in connection with the state custody matter.

## AUTHORITY TO SCREEN A COMPLAINT

This court has inherent authority to screen this case *sua sponte*. *See Mallard v. U.S. Dist. Ct.*, 490 U.S. 296, 307-08 (1989) (*in forma pauperis* statute "authorizes courts to dismiss a 'frivolous or malicious' action, but there is little doubt they would have power to do so even in the absence of this statutory provision"); *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999) ("[A] district court may, at any time, sua sponte dismiss a complaint . . . when the allegations of a complaint are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion."); *Stephens v. Felsch*, No. 3:20-CV-00729-GCS, 2020 WL 9607901, at *1 (S.D. Ill. Sept. 25, 2020), *report and recommendation adopted*, No. 20-CV-729-GCS-SMY, 2020 WL 6395494 (S.D. Ill. Nov. 2, 2020) ("In this Order, the Court exercises its inherent authority to sua sponte screen cases that are 'transparently defective' in order to 'save everyone time and legal expense." (quoting *Hoskins v. Poelstra*, 320 F.3d 761, 763 (7th Cir. 2003)). This authority extends to cases in which the plaintiff has paid the filing fee. *Rowe v. Shake*, 196 F.3d 778, 783 (7th Cir. 1999) ("district courts have the power to screen complaints filed by all litigants, prisoners and non-prisoners alike, regardless of fee status").

## ANALYSIS

### A.    The FAC Fails to Comply with Rule 8(a)

Under Federal Rule of Civil Procedure 8, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see Landers v. Quality Communications, Inc.*, 771 F.3d 638, 640 (9th Cir.2014) ("Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that each claim in a pleading be supported by 'a short and plain statement of the claim showing that the pleader is entitled to relief. . . .' "); *see also* Fed. R. Civ. P. 8(d)(1)(each allegation in a complaint "must be simple, concise, and direct"). A district court must construe *pro se* pleadings liberally and hold such pleadings "to less stringent standards than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, a *pro se* complaint must still comply with the requirements of Rule 8(a). *Hebbe v. Pliler*, 627 F.3d 338, 341-42 (9th Cir. 2010) (although pro se pleadings are construed liberally, a plaintiff must present factual allegations sufficient to state a plausible claim for relief). When a complaint fails to comply with Rule 8(a)(2), "the district court has the power . . . sua sponte, to dismiss the complaint . . . ." *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995); *see Knapp v. Hogan*, 738 F.3d 1106, 1109 (9th Cir. 2013) (violations of Rule 8(a) warrant dismissal).

Rule 8(a) can be violated in "multiple ways." *Knapp*, 738 F.3d at 1109.

"One well-known type of violation is when a pleading says too little—the baseline threshold of factual and legal allegations required was the central issue in the *Iqbal* line of cases." *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To meet this baseline threshold, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal*, 556 U.S. at 678.

Rule 8(a) is, however, also violated "when a pleading says too much." *Knapp*, 738 F.3d at 1109; *see Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058 (9th Cir. 2011) ("[W]e have never held—and we know of no authority supporting the proposition—that a pleading may be of unlimited length and opacity. Our cases instruct otherwise."); *see also McHenry v. Renne*, 84 F.3d 1172, 1179-80 (9th Cir.1996) (affirming a dismissal under Rule 8, and recognizing that "[p]rolix, confusing complaints such as the ones plaintiffs filed in this case impose unfair burdens on litigants and judges").

Here, the FAC (Dkt. 3) is 122 pages long, not including the 149 exhibits. Despite its length and prolix, or perhaps because of it, the FAC fails to set forth a short, plain statement of Plaintiffs' claims as required under Rule 8(a). There are no individual counts setting forth Plaintiffs' specific claims for relief. Rather, in summary fashion, the FAC asserts that the case involves, among other things, the violation of Plaintiffs' procedural and substantive due process rights under the

Fifth and Fourteenth Amendments; the minor Plaintiffs' liberty interests and right of familial relations under the Fifth and Fourteen Amendments; and Plaintiff Ray's right to counsel under the Sixth and Fourteenth Amendments. (*see e.g.,* Dkt. 3 at 3-4.) However, these apparent claims are not specifically tied to any specific factual allegations nor are they tied to any specific Defendant.

The FAC's 122 pages include extraneous and unnecessary factual minutiae, which only serve to further cloud Plaintiffs' apparent claims for relief and any key factual allegations that would support those claims. Quite simply, the FAC "says too much." *Knapp*, 738 F.3d at 1109. The FAC would force the Court and Defendants to sort through the 122 pages and attempt to identify Plaintiffs' claims, and which factual allegations would support those claims. The FAC thus violates Rule 8(a)'s requirement for a short and plain statement of the claim showing Plaintiffs are entitled to relief. *See id.*; *Cafasso*, 637 F.3d at 1058; *McHenry*, 84 F.3d at 1177 (affirming dismissal under Rule 8, stating that "[p]rolix, confusing complaints such as the ones plaintiffs filed in this case impose unfair burdens on litigants and judges"). The FAC also violated Rule 8(e)'s requirement that "[e]ach allegation must be simple, concise, and direct." Accordingly, the Court will dismiss the Complaint. However, the Court will grant Plaintiffs leave to file a second amended complaint that complies with the requirements of Rule 8 and the

instructions set forth in this Order.

**B.      Guidance for Any Amended Complaint**

Because the Court is granting Plaintiffs leave to file a second amended

complaint, the Court provides the following legal standards, which appear to relate

to the claims Plaintiffs seek to bring in this action.

### 1.  Section 1983

The Civil Rights Act, under which this action was filed, provides:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory or the District of
> Columbia, subjects, or causes to be subjected, any citizen of the
> United States or other person within the jurisdiction thereof to the
> deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an action
> at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983.

"[Section] 1983 'is not itself a source of substantive rights,' but merely

provides 'a method for vindicating federal rights elsewhere conferred.' " *Graham*

*v. Connor*, 490 U.S. 386, 393-94 (1989) (citation omitted). To state a claim under

§ 1983, a plaintiff must allege (1) that the defendant acted under color of state law,

and (2) that the defendant deprived the plaintiff of rights secured by the

Constitution or federal law. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185

(9th Cir. 2006); *see also Marsh v. Cnty. of San Diego*, 680 F.3d 1148, 1158 (9th

Cir. 2012) (discussing "under color of state law"). A person deprives another of a

constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.' " *Preschooler II v. Clark Cnty. Sch. Bd. of Trs*., 479 F.3d 1175, 1183 (9th Cir. 2007) (citation omitted). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Id.* This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." *Arnold v. Int'l Bus. Mach. Corp*., 637 F.2d 1350, 1355 (9th Cir. 1981); *see also Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008).

Additionally, a plaintiff must demonstrate that each named defendant personally participated in the deprivation of their rights. *Iqbal*, 556 U.S. at 676-77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *See Monell v. Dep't of Soc. Servs. of City of N.Y*., 436 U.S. 658, 691, 695 (1978).

## 2.  Jurisdiction to Review State Court Decisions

To obtain federal review of state court judicial proceedings, a plaintiff must file a petition for a writ of certiorari in the Supreme Court of the United States. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 486-87 (1983);

*Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923). This requirement, known as the *Rooker-Feldman* doctrine, essentially bars federal district courts "from exercising subject matter jurisdiction over a suit that is a de facto appeal from a state court judgment." *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1139 (9th Cir. 2004); *see also Skinner v. Switzer*, 562 U.S. 521, 532 (2011). Under the *Rooker-Feldman* doctrine, a federal district court lacks jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

The *Rooker-Feldman* doctrine applies even when the state court judgment is not made by the highest state court. *See Worldwide Church of God v. McNair*, 805 F.2d 888, 893 n.3 (9th Cir. 1986). Further, even where a plaintiff casts their claim as a constitutional challenge to the state court's decision, if the plaintiff is challenging the outcome of a state court proceeding, the action is deemed to be a de facto appeal from a state court decision and is barred.

Thus, the *Rooker–Feldman* doctrine applies when a plaintiff in federal court seeks a de-facto appeal of a state-court judgment by (1) asserting errors by the state court as an injury and (2) seeking relief from the state court judgment as a remedy.

*Kougasian v. TMSL, Inc*., 359 F.3d 1136, 1140 (9th Cir. 2004). Further, the

doctrine bars not only issues heard in the state court action, but "any issue raised in

the suit that is 'inextricably intertwined' with an issue resolved by the state court in

its judicial decision." " *Doe v. Mann*, 415 F.3d 1038, 1042 (9th Cir. 2005).

Thus, turning to the present case, if any of Plaintiffs' claims have already

been adjudicated in state court, assert that state court errors resulted in their injury,

and/or are seeking relief from the state court judgment, this Court lacks jurisdiction

over the claims. Plaintiffs must accordingly omit such claims from their second

amended complaint.

### 3. Abstention

There is a "a strong federal policy against federal-court interference with

pending state judicial proceedings." *Younger v. Harris*, 401 U.S. 37, 43 (1971).

Although *Younger* dealt with a federal injunction against a state criminal

proceeding, its comity and federalism principles are equally applicable to civil

proceedings where important state interests are implicated. *Ohio Civil Rights

Commission v. Dayton Christian Schools, Inc*., 477 U.S. 619 (1986).

"Absent extraordinary circumstances, *Younger* abstention is required if the

state proceedings are (1) ongoing, (2) implicate important state interests, and

(3) provide the plaintiff an adequate opportunity to litigate federal claims." *San

Remo Hotel v. San Francisco*, 145 F.3d 1095, 1103 (9th Cir. 1998)(citing *Hirsh v.*

*Justices of the Supreme Court*, 67 F.3d 708, 712 (9th Cir. 1995)). When these three criteria are met, a district court must dismiss the federal action, having "no discretion to grant injunctive relief." *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 816 n. 22 (1976).

"Family relations are a traditional area of state concern." *Moore v. Sims*, 442 U.S. 415, 435 (1979). Thus, in *Moore*, the U.S. Supreme Court held that *Younger* abstention was appropriate and preferred in the context of state child removal proceedings based on allegations of child abuse because of the strong state interest in domestic relations, the superior competence of state courts in settling family disputes, and the possibility of incompatible federal and state court decrees in cases of continuing judicial supervision by the state. *Id.*; *see also Ankenbrandt*, 504 U.S. at 703 ("[T]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States.").

Similarly, the Ninth Circuit has found abstention to be appropriate "when the core issue involves the status of parent and child or husband and wife." *Coats v. Woods*, 819 F.2d 236, 237 (9th Cir. 1987) (affirming abstention and dismissal of action challenging ex-spouse's interference with child custody); *see also Peterson v. Babbitt*, 708 F.2d 465 (9th Cir. 1983) (per curiam) (affirming abstention and

dismissal of suit alleging interference with child visitation). Thus, for example, in *H.C. v. Koppel*, 203 F.3d 610, 613 (9th Cir. 2000), the Ninth Circuit held that *Younger* abstention required the federal court to refrain from interference where a mother filed a federal complaint against the state trial court, state trial court judge, and minor child's guardian ad litem, where the complaint sought an injunction ordering the state court judge to vacate certain child custody orders.

Turning to the present case, if Plaintiffs' custody and guardianship claims are still pending before the state courts, then abstention may be appropriate here. *See id; see also Mann v. Conlin*, 22 F.3d 100, 106 (6th Cir. 1994) (holding that *Younger* abstention was appropriate in § 1983 action alleging that a state court judge violated the plaintiff's due process rights in custody battle).Accordingly, Plaintiffs' second amended complaint must address why the Court should not abstain under *Younger* from hearing their claims.

### 4.  Judicial Immunity

Judges are "not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978). Thus, a judge is entitled to absolute judicial immunity from monetary damages for all acts performed in the exercise of judicial functions. *Id.* at 355-56. A judge is also entitled to absolute immunity from claims for injunctive relief "unless a

declaratory decree was violated or declaratory relief [is] unavailable." 42 U.S.C.

§ 1983.

Absolute immunity for a judge "is justified and defined by the functions it

protects and serves, not by the person to whom it attaches." *Forrester v. White*, 484

U.S. 219, 227 (1988). Once it is determined that a judge was acting in her or his

judicial capacity, absolute immunity applies, "however erroneous the act may have

been, and however injurious in its consequences it may have proved to the

plaintiff." *Ashelman v. Pope*, 793 F.2d 1072, 1075 (9th Cir. 1986) (internal

citations omitted). Indeed, "judicial immunity is not overcome by allegations of

bad faith or malice." *Mireles v. Waco*, 502 U.S. 9, 11 (1991).

To determine whether an act is judicial in nature such that absolute judicial

immunity applies, a court looks to "the nature of the act itself, i.e., whether it is a

function normally performed by a judge, and to the expectations of the parties, i.e.,

whether they dealt with the judge in [her or his] judicial capacity." *Sparkman*, 435

U.S. at 362.

There are two instances where judicial immunity does not apply. First, if the

acts the judge performed were non-judicial in nature. For example, where a judge

left the bench and used physical force to evict a person from the courtroom, the

judge has been found to have performed a nonjudicial act. *See Gregory v.*

*Thompson*, 500 F.2d 59, 63 (9th Cir. 1974). On the other hand, when a plaintiff alleged that the judge ordered officers to forcibly seize and bring the plaintiff into the courtroom, judicial immunity applied because a "judge's direction to court officers to bring a person who is in the courthouse before him is a function normally performed by a judge." *Mireles*, 502 U.S. at 12. Turning to the present case, if Plaintiffs are complaining of acts the judge(s) performed that were not a normal part of court proceedings, they must specify each such act and the reason the act should be classified as "nonjudicial in nature."

Second, judicial immunity does not apply when a judge acts "in the clear absence of all jurisdiction." *Stump*, 435 U.S. at 356 (internal citations omitted). When immunity is at issue, the scope of a judge's jurisdiction "must be construed broadly." *Id*. "A judge will not be deprived of immunity because the action [she or he] took was in error, was done maliciously, or was in excess of [her or his] authority." *Id*. Moreover, the question of whether a judge acted in excess of her or his authority in making a judicial ruling is a distinct issue from the question of whether a judge acted in the clear absence of jurisdiction. Even if a judge exceeds her authority in making a judicial ruling in a particular case, the judge is immune if the case is properly before her. *Mireles*, 502 U.S. at 13.

The difference between acting in the absence of jurisdiction and acting in

excess of authority is made clear by the following example: "[I]f a probate judge, with jurisdiction over only wills and estates, should try a criminal case, he would be acting in the clear absence of jurisdiction and would not be immune from liability for his action; on the other hand, if a judge of a criminal court should convict a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction and would be immune." *Stump*, 435 U.S. at 357.

In reviewing an allegation that a judge acted in the clear absence of all jurisdiction, the Court considers whether the judge was acting beyond the scope of the subject matter jurisdiction of the court in which she presided. *See Sparkman*, 435 U.S. at 356-57; *Ashelman*, 793 F.2d at 1076. Thus, for example, where a judge erred in striking a defendant's motion for disqualification rather than adjudicating it, the failure did not deprive the judge of subject matter jurisdiction or judicial immunity. *Agnew v. Moody*, 330 F.2d 868, 869-70 (9th Cir. 1964).

Turning to the present case, to proceed against the magistrate judges, Plaintiffs must include plausible allegations demonstrating that the complained of acts fall within one of the exceptions to absolute judicial immunity.

### 5. Procedural Due Process

The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property [without due process of law]; and those who seek to invoke its procedural protection must establish that one of these

interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). To state a

claim for violation of procedural due process under § 1983, a plaintiff must allege

facts showing: "(1) a deprivation of a constitutionally protected liberty or property

interest, and (2) a denial of adequate procedural protections." *Tutor-Saliba Corp. v.*

*City of Hailey*, 452 F.3d 1055, 1061 (9th Cir. 2006) (citations omitted). As to the

second element—adequate procedural protections—" '[o]rdinarily, due process of

law requires [notice and] an opportunity for some kind of hearing prior to the

deprivation of a significant property interest.' " *Halverson v. Skagit Cnty.*, 42 F.3d

1257, 1260-61 (9th Cir. 1994).

### 6. Substantive Due Process

"Substantive due process forbids the government from depriving a person of

life, liberty, or property in such a way that 'shocks the conscience' or 'interferes

with the rights implicit in the concept of ordered liberty.' " *Corales v. Bennett*, 567

F.3d 554, 568 (9th Cir. 2009) (citations omitted). The theory underlying

substantive due process, as distinct from procedural due process, is that "by barring

certain government actions regardless of the fairness of the procedures used to

implement them, it serves to prevent governmental power from being 'used for

purposes of oppression.' " *Daniels v. Williams*, 474 U.S. 327, 331 (1986) (citation

omitted).

"A threshold requirement to a substantive or procedural due process claim is

the plaintiff's showing of a liberty or property interest protected by the Constitution." *Wedges/Ledges of California, Inc. v. City of Phoenix, Ariz.*, 24 F.3d 56, 62 (9th Cir. 1994) (citing *Board of Regents v. Roth*, 408 U.S. 564, 569 (1972) and *Kraft v. Jacka*, 872 F.2d 862, 866 (9th Cir. 1989)). Once that threshold is met, "[s]ubstantive due process cases typically apply strict scrutiny in the case of a fundamental right and rational basis review in all other cases. When a fundamental right is recognized, substantive due process forbids the infringement of that right 'at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest.' " *Witt v. Dep't of Air Force*, 527 F.3d 806, 817 (9th Cir. 2008) (quoting *Reno v. Flores*, 507 U.S. 292, 302 (1993)). When the action does not infringe a fundamental right "the statute need only bear a 'reasonable relation to a legitimate state interest to justify the action.' " *United States v. Juvenile Male*, 670 F.3d 999, 1012 (9th Cir. 2012) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 722 (1997)).

C.    **Instructions for Amendment**

If Plaintiffs choose to file a second amended complaint, they must comply with the requirements of Rule 8(a) and (d)(1), and the instructions set forth in this Order. The second amended complaint must be concise and set forth a *short and plain* statement of the claim showing that they are entitled to relief. Fed. R. Civ. P. 8(a)(2). Each allegation must be simple, concise, and direct. *Id.* at 8(d)(1). The

second amended complaint must allege a sufficient causal connection between each defendant's actions and the claimed deprivation of their constitutional rights. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978); *see also Iqbal*, 556 U.S. at 678.

Further, the second amended complaint must contain all of Plaintiffs' allegations in a single pleading and cannot rely upon or incorporate by reference prior pleadings. Dist. Idaho Loc. Civ. R. 15.1. An amended pleading completely replaces the original pleading. There is no need to include exhibits with the amended complaint, nor is there a need to cite to or quote from case law.

Plaintiffs will be required to use the following format for their amended complaint. For each claim against each defendant, Plaintiffs must state the following (organized by each defendant): (1) the name of the person or entity, i.e., the defendant, that Plaintiff claims to have caused the alleged deprivation of their constitutional rights; (2) the facts showing that the defendant is a state actor (such as state employment or a state contract) or a private entity/private individual acting under color of state law; (3) the dates on which the conduct of the defendant allegedly took place; (4) the specific conduct or action by that defendant that Plaintiffs allege is unconstitutional; (5) the particular provision of the Constitution Plaintiffs allege has been violated by that defendant; (6) facts alleging that the

elements of the constitutional violation are met; (7) the injury or damages Plaintiffs personally suffered as a result of that defendant's conduct or action; and (8) the particular type of relief Plaintiffs are seeking in relation to that defendant.

This format must be followed for the first defendant and the first claim for relief against that defendant, and then Plaintiffs must follow the same format for each different claim for relief against the first defendant. Then Plaintiffs must follow the same format for each claim for relief they intend to assert against each additional defendant. An example format might be:

1.      Defendant 1:

    A.      Procedural Due Process claim against Defendant 1 (stating the "what, when, where, why, and how" of the allegedly wrongful act).

    B.      Substantive Due Process claim against Defendant 1 (stating the "what, when, where, why, and how" of the allegedly wrongful act).

2.      Defendant 2:

    A.      Procedural Due Process claim against Defendant 2 (stating the "what, when, where, why, and how" of the allegedly wrongful act).

    B.      Substantive Due Process claim against Defendant 2 (stating the "what, when, where, why, and how" of the allegedly wrongful).

Note that these are merely examples of the format to follow; this does not in any

way suggest that these may be viable claims against Defendants.

Further, as set forth in more detail above:

1.    If there are pending state proceedings, Plaintiffs' second amended complaint must address why the Court should not abstain under *Younger* from hearing their claims.

2.    If any of Plaintiffs' claims have already been adjudicated in state court, this Court lacks jurisdiction over them and Plaintiffs shall therefore omit such claims from their second amended complaint.

3.    Plaintiffs must include plausible allegations demonstrating that they meet one of the exceptions to absolute judicial immunity or, alternatively, omit the judges from their second amended complaint.

As to the Doe defendants, at this point, Plaintiffs may not know the identity of the persons who allegedly wronged them. Although identifying defendants as "John Doe" or "Jane Doe" is not prohibited, the practice is not favored in federal court. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). Plaintiffs may designate defendants as "John Doe" or "Jane Doe" if (1) the amended complaint identifies each by a job description or title; (2) the amended complaint states the "what, when, where, why, and how" of the allegedly wrongful act of each Doe Defendant; and (3) Plaintiffs make reasonable efforts to learn the names of the

unknown defendants before filing the second amended complaint. *See, e.g., O'Neal v. Unknown Superamerica Employees*, No. 06–C–40–C, 2006 WL 5925948 (W.D. Wis. Mar. 14, 2006).

Finally, as discussed above, the FAC is 122 pages in length and includes extraneous and unnecessary factual minutiae, as well as more than 149 exhibits. Reviewing the first amended complaint has imposed a significant burden on the Court's limited resources.

The function of a complaint is not to list every single fact relating to Plaintiffs' claims. To the contrary, a complaint is to contain "a short and plain statement of the claim showing that" Plaintiffs are entitled to relief. Fed. R. Civ. P. 8(a)(2). The Court finds that Plaintiffs' claims can be adequately pled in a complaint that is no longer than 25 pages in length. The Court accordingly orders that any amended complaint filed by Plaintiffs in this action shall be no longer than 25 pages in length. Again, there is no need to include citations to, or quotes from, case law. There is also no need to include exhibits.

If Plaintiffs' second amended complaint does not comply with the requirements of Rule 8 or this Order, this case may be dismissed without further notice. *See Knapp v. Hogan*, 738 F.3d 1106, 1110 (9th Cir. 2013). If Plaintiffs fail to file anything further, their first amended complaint may be dismissed with

prejudice (meaning it cannot be brought again) and without further notice.

### D.     Request for Injunctive Relief

In their FAC, Plaintiffs seek, among other things, a temporary restraining

order and injunction. (Dkt. 3.) The request will be denied.

To obtain preliminary injunctive relief, the moving party must demonstrate

(1) that they will suffer irreparable injury if the relief is denied; (2) there is a strong

likelihood that they will prevail on the merits at trial; (3) the balance of potential

harm favors the moving party; and (4) the public interest favors granting relief.

*International Jensen, Inc. v. Metrosound U.S.A.*, 4 F.3d 819, 822 (9th Cir. 1993);

s*ee also id.* (setting forth the  "alternative" standard—that the moving party

demonstrates either: (1) a combination of probable success on the merits and the

possibility of irreparable injury if relief is not granted; or (2) the existence of

serious questions going to the merits combined with a balancing of hardships

tipping sharply in favor of the moving party). The requirement of the likelihood of

irreparable harm increases or decreases in inverse correlation to the probability of

success on the merits, with these factors representing two points on a sliding scale.

*See United States v. Nutricology, Inc.*, 982 F.2d 394, 397 (9th Cir. 1992).

Here, Plaintiffs have not demonstrated that they have a viable claim against

Defendants, let alone a likelihood of success on the merits. Accordingly, Plaintiffs'

motion for preliminary injunctive relief will be denied without prejudice.

MEMORANDUM DECISION AND ORDER - 22

## ORDER

**IT IS ORDERED that:**

1.      Plaintiffs' Amended Emergency Motion for Temporary Restraining Order and Preliminary Injunction (Dkt. 3), construed as a First Amended Complaint, is DISMISSED without prejudice and with leave to amend.

2.      Plaintiffs' request for preliminary injunctive relief (Dkt. 3) is DENIED without prejudice.

3.      Plaintiffs are directed to file, by January 7, 2022, an amended complaint, no longer than 25 pages in length, and titled "Second Amended Complaint."

4.      If the second amended complaint fails to comply with the requirements of Federal Rule of Civil Procedure 8 and this Order, this case may be dismissed without further notice.

5.      If Plaintiffs fail to file anything further, this case may be dismissed with prejudice (meaning it cannot be brought again) and without further notice.

DATED: December 1, 2021

_____
B. Lynn Winmill
U.S. District Court Judge